UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

LUCAS DESLANDE, Individually and on
Behalf of All Others Similarly Situated,

                    Plaintiff,

    vs.

FORTREA HOLDINGS INC., THOMAS
PIKE, and JILL MCCONNELL,

                 Defendants.

———————————————————— x

:   Civil Action No. 1:25-cv-04630-KPF
:
:   <u>CLASS ACTION</u>
:
:
:   THE INSTITUTIONAL INVESTORS'
:   OPPOSITION TO COMPETING LEAD
:   PLAINTIFF MOTIONS
:
:
:
:
:
:
:
:

4923-3311-7791.v1

## I.    INTRODUCTION

Four competing motions were filed by putative class members seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"): (1) Construction Industry Laborers Pension Fund ("CIL Pension") and City of Pontiac Reestablished General Employees' Retirement System ("PGERS") (collectively, the "Institutional Investors"); (2) Nova Scotia Public Service Superannuation Plan and Nova Scotia Teachers' Pension Plan ("Nova Scotia Plans"); (3) City of Boca Raton Police & Firefighters' Retirement System ("Boca Raton P&F"); and (4) Stefan Muenchhagen. *See* ECF 21, 24, 29, 30.[1] The PSLRA's statutory framework provides a strong presumption that the "most adequate plaintiff" in a securities class action is the "person or group of persons" with the largest financial interest in the relief sought by the class that also meets the Rule 23 adequacy and typicality requirements. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

The Institutional Investors are the "most adequate plaintiff" to lead this case. The Institutional Investors have the largest financial interest in the relief sought by the class under any applicable measure. The Institutional Investors also readily satisfy Rule 23's requirements. *See* ECF 33 at 4-6; ECF 36-4. Because the Institutional Investors have the largest financial interest of any movant and are experienced institutional investors who are committed to achieving the best possible outcome for the class, the Institutional Investors respectfully request that the Court appoint them as Lead Plaintiff.

By contrast, the competing movants fail to satisfy the PSLRA's requirements because they did not suffer the largest loss and cannot rebut the presumption in the Institutional Investors' favor. Their motions should be denied.

---

[1]    On August 5, 2025, Stefan Muenchhagen filed a notice withdrawing his motion. *See* ECF 38.

II.    **ARGUMENT**

In determining the "most adequate plaintiff," the PSLRA provides that:

[T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –

(aa) has either filed the complaint or made a motion in response to a notice . . . ;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  The most adequate plaintiff presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff – (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(B)(iii)(II).

As demonstrated herein, the Institutional Investors are the presumptively "most adequate plaintiff" because they are the movant with the largest financial interest that also satisfies the Rule 23 requirements.

A.    **The Institutional Investors Have the Largest Financial Interest**

"[T]he PSLRA does not indicate how to calculate which plaintiff has the 'largest financial interest.'" *Husson v. Garrett Motion Inc.*, 2021 WL 211541, at *2 (S.D.N.Y. Jan. 21, 2021) (Cronan, J.).[2] "In order to make this calculation, many courts in this District look to the factors that make up the so-called *Olsten-Lax* Test: '(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) total net funds expended during

---

[2]    Unless otherwise noted, all emphasis is added and citations are omitted.

- 2 -

the class period; and (4) the approximate losses suffered.'" *Id.*; *Goldenberg v. NeoGenomics, Inc.*, 2023 WL 6389101, at *3 (S.D.N.Y. Oct. 2, 2023) (Rearden, J.). "Many courts place 'the most emphasis on the last of the four factors.'" *Husson*, 2021 WL 211541 at *2; *see Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 475-76 (S.D.N.Y. 2011) (Crotty, J.) ("[A] trend seems to be emerging that the *Lax* factors are properly ordered, so that the number of shares purchased (Factor 1) is the least important and the loss suffered (Factor 4) is the most important."). "To calculate approximate losses, courts 'typically employ one of two methodologies: First-In-First-Out ("FIFO") or Last-In-First-Out ("LIFO").'" *Hom v. Vale, S.A.*, 2016 WL 880201, at *3 (S.D.N.Y. Mar. 7, 2016) (Woods, J.). "Using LIFO to measure is the prevalent practice in this district and others." *City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, 2023 WL 6458930, at *5 (S.D.N.Y. Oct. 4, 2023) (Schofield, J.).

The Institutional Investors clearly suffered the greatest losses and have the largest financial interest in the relief sought by the class under each metric of the *Lax-Olsten* test:

| MOVANT[3] | SHARES PURCHASED | NET SHARES PURCHASED | NET FUNDS EXPENDED | LOSS SUFFERED (LIFO) |
|---|---|---|---|---|
| Institutional Investors | 37,581 | 22,726 | $750,970 | $595,726 |
| Nova Scotia Plans | 35,544 | 0 | $440,614 | $440,614 |
| Boca Raton P&F | 13,056 | 10,001 | $319,150 | $247,353 |

---

[3]    In addition to having the largest financial interest as a whole, the Institutional Investors also include the individual movant that suffered the largest loss. Indeed, CIL Pension alone suffered a loss of more than $390,000, which is nearly $140,000 more than any other entity. This fact further confirms the Institutional Investors' presumptive lead plaintiff status. *See, e.g.*, *Peneycad v. RTX Corp.*, 2024 WL 1932632, at *6 (D. Conn. May 2, 2024) (recognizing there was "no incentive to cobble the group together to gain lead plaintiff status" because either group member "could have moved to be appointed as lead plaintiff individually and claimed a larger financial interest than" the next movant).

4923-3311-7791.v1

Pursuant to the PSLRA's sequential process, "'[o]nce the court "identifies the plaintiff with the largest stake in the litigation, [*i.e.*, the Institutional Investors] further inquiry must focus on ***that plaintiff*** alone and be limited to determining whether [they] satisf[y] the other statutory requirements."'" *Hom*, 2016 WL 880201, at *6.

**B.      The Institutional Investors Satisfy Rule 23's Requirements and Are Entitled to the Most Adequate Plaintiff Presumption**

At this stage of proceedings, one need only make a "'preliminary showing'" that Rule 23's typicality and adequacy requirements have been satisfied. *City of Omaha*, 2023 WL 6458930, at *6. The Institutional Investors satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as lead plaintiff. *See* ECF 33 at 4-6; ECF 36-4.

The Institutional Investors meet Rule 23's typicality requirement because their claims arise from the same course of events as the claims of all other class members and involve similar legal arguments to prove the defendant's liability, namely, "like the rest of the class, the [Institutional Investors] allege[] that its members purchased [Fortrea] shares at a price inflated by Defendants' fraudulent misrepresentations, and that [they] suffered injury when the share price declined following the public correction of those misrepresentations." *San Antonio Fire and Police Pension Fund v. Dentsply Sirona Inc.*, 2023 WL 3750115, at *7 (S.D.N.Y. June 1, 2023) (Cronan, J.). Accordingly, the Institutional Investors are typical of the class that they seek to represent.

Likewise, the Institutional Investors meet Rule 23's adequacy requirement because their interests are clearly aligned with the interests of the other members of the class. In addition, the Institutional Investors selected counsel with a demonstrated track record of success in prosecuting securities fraud cases. *See* ECF 33 at 6-8; *see also, e.g.*, *San Antonio Fire*, 2023 WL 3750115, at *8 ("The Court has reviewed Robbins Geller's firm resume, which sets forth its extensive experience representing plaintiffs in class actions and profiles the partners and other attorneys who have led

- 4 -

those representations."); *United Indus. Workers Pension Plan v. Waste Mgmt., Inc.*, 2022 WL 17342492, at *2 (S.D.N.Y. Nov. 30, 2022) (Schofield, J.) ("Robbins Geller has significant experience in securities litigation as lead plaintiff's counsel.").

The Institutional Investors – sophisticated institutional investors with experience serving as lead plaintiff – are also the preferred lead plaintiff candidate pursuant to the PSLRA. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 273 (3d Cir. 2001) ("Both the Conference Committee Report and the Senate Report state that the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class members."). Indeed, the Institutional Investors' collaboration in this litigation advances the purposes of the PSLRA, as it follows from their roles as fiduciaries charged with collectively managing over $1.4 billion in assets for the benefit of thousands of participants and their beneficiaries. *See* ECF 36-4 at ¶¶2-3. Simply put, "[t]hese pension systems have vast assets, apparent investment sophistication, experience in some prior and current class-action lawsuits, and an administrative structure under which they fulfill their fiduciary obligations to their members by choosing counsel to represent them and then maintaining oversight over those attorneys." *City of Brockton Ret. Sys. v. The Shaw Grp., Inc.*, 2007 WL 2845125, at *4 (S.D.N.Y. Sept. 26, 2007) (Dohlinger, J.); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (Chin, J.) ("cooperation among plaintiffs, particularly plaintiffs that are sophisticated institutional investors" demonstrates the group's ability to oversee counsel); *see also Ong v. Chipotle Mexican Grill, Inc.*, No. 1:16-cv-00141-KPF, ECF 43 (S.D.N.Y. Apr. 18, 2016) (Failla, J.) (appointing two institutional investors as lead plaintiff); *Donio v. Linn Energy, LLC.*, No. 1:13-cv-04875-CM, Minute Entry (S.D.N.Y. Oct. 4, 2013) (McMahon, J.) (appointing group including multiple institutions as lead plaintiff).

4923-3311-7791.v1

The Institutional Investors have thus evidenced their ability, willingness, and intent to jointly carry out the duties and responsibilities of lead plaintiff, and there is no greater showing required to demonstrate their exceptional capability to lead this case together on behalf of their fellow class members. *See* ECF 36-4; *see also San Antonio Fire*, 2023 WL 3750115, at *3 (the PSLRA does not "impose on a group seeking lead plaintiff appointment any greater showing with respect to its financial interest by virtue of its status as a group"); *Hansen v. Ferrellgas Partners, L.P.*, 2017 WL 281742, at *3 n.4 (S.D.N.Y. Jan. 19, 2017) (Sullivan, J.) ("[T]o the extent decisions in this District suggest that the PSLRA requires a greater showing from a group with the largest financial interest, . . . the Court respectfully disagrees that the statute imposes such a rule."); *Gru v. Axsome Therapeutics, Inc.*, 2024 WL 230744, at *1 (S.D.N.Y. Jan. 22, 2024) (Schofield, J.) (appointing group of three individual investors as lead plaintiff); *Fasano v. Li.*, No. 1:16-cv-08759-KPF, ECF 32 (S.D.N.Y. Mar. 8, 2017) (Failla, J.) (appointing group of one individual and two institutions as lead plaintiff).[4]

Few investors are as qualified to serve as lead plaintiff as the Institutional Investors, whose prior successes serving as lead plaintiff speak for themselves. *See, e.g.*, *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc.*, No. 5:12-cv-5162 (W.D. Ark.) (PGERS predecessor fund secured a $160 million recovery as lead plaintiff); *Azar v. Grubhub Inc.*, No. 1:19-cv-07665 (N.D. Ill.)

---

[4]    Notably, the movant with the next largest asserted loss in this case, the Nova Scotia Plans, recently acknowledged this non-controversial principle in a filing in this District. Just last month, in *Shannahan v. FTAI Aviation Ltd.*, No. 1:25-cv-00541-JAV (S.D.N.Y.), the Nova Scotia Plans filed a notice of non-opposition to a competing motion filed by a group of previously unaffiliated institutional investors with larger losses. *Id.*, ECF 46 at 2 (stating that "based on their claimed losses, [] the Boston, MA / Hollywood, FL Group has triggered the PSLRA's rebuttable presumption"). Just like the Institutional Investors here, the larger group in *Shannahan* was comprised of two "sophisticated institutional investors that have served as lead plaintiffs or co-lead plaintiffs in other securities class actions . . . and are familiar with the duties attendant thereto." *Shannahan v. FTAI Aviation Ltd.*, 2025 WL 1984304, at *4 (S.D.N.Y. July 17, 2025) (Vargas, J.) (citing the two institutional investors' joint declaration submitted in support of their motion).

4923-3311-7791.v1

(PGERS secured a $42 million recovery as lead plaintiff); *Willis v. Big Lots, Inc.*, No. 2:12-cv-00604 (S.D. Ohio) (PGERS predecessor fund secured a $38 million recovery as lead plaintiff); *City of Fort Lauderdale Police and Firefighters' Ret. Sys. v. Pegasystems Inc.*, No. 1:22-cv-11220 (D. Mass.) (CIL Pension secured a $35 million recovery as part of an institutional lead plaintiff group).

Finally, the Institutional Investors' trading patterns further make them the ideal lead plaintiff to represent the entire class. By purchasing Fortrea stock at various times over a 13-month period and holding securities through each of the 3 alleged corrective disclosures, the Institutional Investors ensure broad representation for class members, regardless of when during the Class Period they purchased Fortrea securities. *See* ECF 36-3 (the Institutional Investors' loss chart).

This trading stands in contrast to that of the Nova Scotia Plans, which is significantly more limited in scope and breadth and therefore less representative of class members and their claims:

- They did not begin purchasing Fortrea securities until more than seven months into the Class Period;

- Their purchases were confined to a narrow four-month window during the Class Period; and

- They sold ***all*** Fortrea stock nearly five months before the end of the Class Period and before two of the three alleged corrective disclosures.[5]

*See* ECF 35-1. This less-than-ideal trading pattern presents a risk to the class: if the Court were to conclude that the first alleged corrective disclosure – the only corrective disclosure the Nova Scotia Plans held securities through  is not viable, then the class would be left without a representative with standing to pursue its claims.

---

[5]    Defendants are likely to argue that the first corrective disclosure alleged in the complaint (which was filed by the Nova Scotia Plans' counsel on behalf of a different plaintiff) was merely included to ensure the Nova Scotia Plans suffered a cognizable loss. While counsel for the Institutional Investors does not believe such an argument would be meritorious, it is likely to present an unnecessary distraction throughout the litigation for the Nova Scotia Plans, but not for the Institutional Investors.

- 7 -

4923-3311-7791.v1

This risk is not merely hypothetical.  Courts have consistently refused to appoint lead plaintiffs who sold out before key corrective disclosures, finding that such movants are subject "'to the unique defense that [they] cannot prove loss causation.'"  *Pardi v. Tricida, Inc.*, 2021 WL 1381271, at *1 (N.D. Cal. Apr. 2, 2021); *Doshi v. Gen. Cable*, 2017 WL 5178673, at *3 (E.D. Ky. Nov. 7, 2017) ("a party like PREPA cannot show it was injured by disclosures that occurred after it divested itself of all of defendant's stock"); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 240 (E.D.N.Y. 2011) (Declining to appoint lead plaintiff movant claiming largest financial interest where "the Fund sold *all* of its shares and incurred all of its losses during the Class Period, but before the September 2010 revelation of fraud. . . .  However, if the district court later finds that the January announcement relating to projected revenues does not constitute a disclosure of fraud, none of the Fund's losses would qualify as proximately linked to the alleged fraud in this case.") (emphasis in original).  Thus, while the Nova Scotia Plans lack the largest financial interest, their motion could not be granted for the independent reason that they are subject to unique defenses that preclude their appointment as lead plaintiff.

In sum, the Institutional Investors are entitled to the PSLRA's "most adequate plaintiff presumption."

### C.    The Presumption in Favor of Appointing the Institutional Investors as Lead Plaintiff Cannot Be Rebutted

To rebut the strong presumption in favor of appointing the Institutional Investors as lead plaintiff, the PSLRA requires "proof" that the Institutional Investors "will not fairly and adequately protect the interests of the class; or . . . [are] subject to unique defenses that render such plaintiff incapable of adequately representing the class." *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).  Here, the competing movants cannot offer any such proof.  Accordingly, the Court should grant the Institutional Investors' lead plaintiff motion and deny the competing motions.

4923-3311-7791.v1

## III.   CONCLUSION

It is axiomatic that the investor with the largest financial interest that also satisfies the requirements of Rule 23 is entitled to the PSLRA's most adequate plaintiff presumption.  The Institutional Investors satisfy this standard, and the competing movants do not possess the largest financial interest and, therefore, cannot trigger the presumption.  Accordingly, the Institutional Investors respectfully submit that their motion should be granted, and the competing motions should be denied.

DATED:  August 15, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHAD JOHNSON
NOAM MANDEL

*s/ Chad Johnson*
CHAD JOHNSON

420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
chadj@rgrdlaw.com
noam@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
MICHAEL ALBERT
KENNETH P. DOLITSKY
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
dmyers@rgrdlaw.com
malbert@rgrdlaw.com
kdolitsky@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

- 9 -

4923-3311-7791.v1

ASHERKELLY
CYNTHIA J. BILLINGS-DUNN
25800 Northwestern Highway, Suite 1100
Southfield, MI  48075
Telephone:  248/746-2710
cbdunn@asherkellylaw.com

Additional Counsel

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing memorandum of law complies with the formatting and word-count limitations pursuant to Rule 7.1(c) of the United States District Court for the Southern District of New York as it contains 2,677 words.

_s/ Chad Johnson_
CHAD JOHNSON

- 10 -

4923-3311-7791.v1