**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LUCAS DESLANDE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FORTREA HOLDINGS INC., THOMAS PIKE, and JILL MCCONNELL,<br><br>Defendants. | Case No.  1:25-cv-04630-KPF |

**MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF THE MOTION OF THE NOVA SCOTIA PUBLIC SERVICE SUPERANNUATION PLAN AND THE NOVA SCOTIA TEACHERS' PENSION PLAN FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS**

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.    THE NOVA SCOTIA PLANS HAVE THE LARGEST FINANCIAL INTEREST AND
      ARE THE PRESUMPTIVE LEAD PLAINTIFF .............................................................. 2

II.   THE RULE 23 EVALUATION AND PRESUMPTION REBUTTAL ANALYSIS
      FAVOR THE NOVA SCOTIA PLANS ........................................................................ 6

      A.    The PGERS / CIL Group Does Not Withstand Scrutiny ....................................... 7

      B.    The Nova Scotia Plans Satisfy Rule 23 And Lack Any Rebuttal Vulnerability ... 10

III.  DEFENDANTS' ARGUMENTS LACK MERIT ............................................................ 14

      A.    The Court Is Free To Enter The Proposed Protective Provisions ......................... 14

      B.    The Nova Scotia Plans' Efforts Further Demonstrate That They Are The "Most
            Adequate Plaintiff" "Most Capable" Of Representing The Class ........................ 16

CONCLUSION ............................................................................................................. 16

CERTIFICATE OF WORD COUNT ........................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alkhoury v. Lululemon Athletica, Inc.*,
  No. 13 Civ. 4596, 2013 WL 5496171 (S.D.N.Y. Oct. 1, 2013) ..................................................4

*Aronson v. McKesson HBOC, Inc.*,
  79 F. Supp. 2d 1146 (N.D. Cal. 1999) ................................................................................10, 12

*Banerjee v. Zhangmen Educ., Inc., et al*,
  No. 1:21-cv-09634 (S.D.N.Y. (Feb. 11, 2022) ........................................................................16

*Beckman v. Ener1, Inc.*,
  No. 11 Civ. 5794, 2012 WL 512651 (S.D.N.Y. Feb. 15, 2012) ................................................12

*Eichenholtz v. Verifone Holdings, Inc.*,
  No. C 07-06140, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008)..............................................12

*Galmi v. Teva Pharms. Indus. Ltd.*,
  302 F. Supp. 3d 485 (D. Conn. 2017)................................................................................11, 12

*In re Cloudera, Inc. Sec. Litig.*,
  No. 19-CV-03221, 2019 WL 6842021 (N.D. Cal. Dec. 16, 2019)...........................................12

*In re Doral Fin. Corp. Sec. Litig.*,
  414 F. Supp. 2d 398 (S.D.N.Y. 2006)................................................................................3, 7

*In re Hut 8 Corp. Sec. Litig.*,
  No. 1:24-cv-00904-VM (S.D.N.Y. Apr. 19, 2024)...................................................................15

*In Re: Med. Properties Tr., Inc. Sec. Litig.*,
  No. 1:23-cv-08597 (S.D.N.Y. Aug. 13, 2024).........................................................................15

*In re Petrobras Sec. Litig.*,
  104 F. Supp. 3d 618 (S.D.N.Y. 2015).................................................................................7, 8

*In re Pfizer Inc. Sec. Litig.*,
  233 F.R.D. 334 (S.D.N.Y. 2005) .......................................................................................7, 12

*In re Pfizer Inc. Sec. Litig.*,
  No. 04-cv-09866 (S.D.N.Y. Feb. 14, 2005)............................................................................12

*Jakobsen v. Aphria, Inc.*,
  No. 18 Civ. 11376, 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ....................................8, 10

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015)................................................................8, 9, 12

*Kniffin v. Micron Tech., Inc.*,
379 F. Supp. 3d 259 (S.D.N.Y. 2019)......................................................................11

*Lax v. First Mercs. Acceptance Corp.*,
No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997)............................1, 2, 3, 4, 5, 6, 13

*Malm v. STMicroelectronics N.V., et al*,
No. 1:24-cv-06384 (S.D.N.Y. Nov. 6, 2024)...........................................................15

*Micholle v. Ophthotech Corp.*,
No. 17-CV-210, 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018)..............................12

*Pio v. General Motors Co.*,
Civ. No. 14–11191, 2014 WL 5421230 (E.D. Mich. Oct. 24, 2014) ........................4

*Pipefitters Loc. No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
275 F.R.D. 187 (S.D.N.Y. 2011) ...............................................................................9

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
No. 06 CIV. 5797, 2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007) .........................4, 7

*Semerak v. VNET Group, Inc., et al*,
No. 1:23-cv-11187 (S.D.N.Y. Mar. 13, 2024) .........................................................15

*Silverberg v. DryShips Inc.*,
No. 17-CV-4547, 2018 WL 10669653 (E.D.N.Y. Aug. 21, 2018) ....................3, 4, 5

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008)....................................................................8, 12

*Westchester Putnam Cntys. Heavy & Highway Laborers Loc. 60 Benefit Funds v. Brixmor Prop. Grp. Inc.*, No. 16-CV-02400, 2016 WL 11648466 (S.D.N.Y. Nov. 29, 2016) ...........3, 5

## Statutes

Private Securities Litigation Reform Act of 1995 ................................................ *passim*

15 U.S.C. §78u-4(b)(3)(B).........................................................................................14

15 U.S.C. §78u-4(a)(3)(B)(i) .............................................................1, 7, 14, 16, 17

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) ...............................................................1, 6, 16

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc)................................................................1, 6, 16

15 U.S.C. §78u-4(a)(3)(B)(iii)(II)....................................................................1, 6, 16

15 U.S.C. §78u-4(b)(3)(C)(i) ................................................................................................14

## Rules

Fed. R. Civ. P. 23 .............................................................................1, 2, 6, 7, 10, 13, 14, 16, 17

Local Civ. R. 5.2 ................................................................................................................15

## Other Authorities

H.R. Conf. Rep. 104-369 at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ............................3, 8

S. Rep. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 769..........................................................8

Movants the Nova Scotia Plans[1] respectfully submit this Memorandum in further support of their motion for appointment as Lead Plaintiffs (ECF 29) and in opposition to the competing motions of: (i) the City of Pontiac Reestablished General Employees' Retirement System ("PGERS") and the Construction Industry Laborers Pension Fund (the "CIL Fund" and, together with PGERS, the "PGERS / CIL Group") (ECF 30); and (ii) City of Boca Raton Police and Firefighters Retirement System ("Boca Raton") (ECF 24), with respect to which Boca Raton filed a "Notice of Non-Opposition" (ECF 39) hours before the filing deadline for responses.[2]

## INTRODUCTION

The Court's statutory responsibility at this juncture is clear – to appoint the movant(s) "that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). In identifying this "most adequate plaintiff," the Court must consider which movants have "the largest financial interest in the relief sought by the class," 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb), but the statutory inquiry does not stop there. The Court must also consider whether movants satisfy Fed. R. Civ. P. 23's requirements, 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc), and whether the presumption favoring those movants claiming the "largest financial interest" is rebutted by the circumstances presented, 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

Here, under the widely-accepted *Lax* factors used by the courts, this Court must choose between the Nova Scotia Plans and the PGERS / CIL Group, as Boca Raton is simply not competitive – as it now concedes (ECF 39). When directly compared, the factors split evenly between the Nova Scotia Plans and the PGERS / CIL Group if both are assessed intact. However,

---

[1]    Herein, unless otherwise noted, all terms are defined as they were in the Nova Scotia Plans' opening brief (ECF 32), all emphasis is added, and all internal quotations / citations are omitted.

[2]    One other putative Class member, retail investor Stefan Muenchhagen, also filed a competing lead plaintiff motion (ECF 21), but *withdrew* his motion on n August 5, 2025. ECF 38. Because Boca Raton has not formally withdrawn its motion, it will still be addressed herein.

1

if the Court either disaggregates both groups (and thereafter focuses only on each group's larger member) or disaggregates only the artificially created PGERS / CIL Group, the *Lax* factors swing three-to-one in favor of the Nova Scotia Plans. Thus, and as detailed herein, the PSLRA's rebuttable presumption should benefit the Nova Scotia Plans, not the PGERS / CIL Group.

Regardless, the statutorily-required Rule 23 evaluation and the presumption rebuttal analysis squarely favor the Nova Scotia Plans. The Nova Scotia Plans have a longstanding inter-relationship, unified leadership and investment management, and a facially credible and cohesive approach to overseeing this litigation without risk of internal disagreement, dispute, or paralysis. The same simply cannot be said of the PGERS / CIL Group, an attorney-created artifice whose shallow relationship is based on a phone call shortly before their motion was filed and who failed to provide any details for the Court's consideration regarding how they would cohesively oversee this litigation, resolve disputes or disagreements, and ensure timely, coherent action.

For all these reasons, the Nova Scotia Plans respectfully submit that they should be appointed to serve as PSLRA lead plaintiffs. Alternatively, if the Court chooses to disaggregate all groups seeking appointment, then PSSP should be appointed to serve in its individual capacity.

## ARGUMENT

### I. THE NOVA SCOTIA PLANS HAVE THE LARGEST FINANCIAL INTEREST AND ARE THE PRESUMPTIVE LEAD PLAINTIFF

The Court is presented with a choice from among three movants. Two – the Nova Scotia Plans and the PGERS / CIL Group – are movant groups of institutional investors claiming six-figure losses, both having spent over $1 million purchasing tens of thousands of Fortrea shares during the Class Period. The third is a solo institutional investor movant claiming a smaller six-figure loss, having spent significantly less money purchasing fewer Fortrea shares during the Class Period. That landscape is a good starting point, given that the PSLRA and its legislative history

2

express a preference for institutional investors to be appointed lead plaintiffs. *See* H.R. Conf. Rep. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733. However, of the three remaining movants, only the two movant groups – the Nova Scotia Plans and the PGERS / CIL Group – have a colorable claim to having the "largest financial interest."

Courts nationwide assess financial interest by applying the four factors articulated in the seminal case *Lax v. First Mercs. Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997): (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.[3] Courts in this Judicial District and elsewhere consider the *Lax* factors holistically in assessing financial interest for lead plaintiff appointment purposes – particularly where, as here, a relatively modest difference separates competing movants' claimed losses. *Westchester Putnam Cntys. Heavy & Highway Laborers Loc. 60 Benefit Funds v. Brixmor Prop. Grp. Inc.*, No. 16-CV-02400, 2016 WL 11648466 (S.D.N.Y. Nov. 29, 2016), is instructive. There, in evaluating two competing groups of institutional investors, the court appointed the one claiming a $20,884 (or 16%) smaller loss. *Id.* at *1-2 (citing, *inter alia*, *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006) (finding a $386,186 (or 20.1%) difference in two movants' losses was "roughly equal")). The court explained:

> The other [*Lax*] factors, however, overwhelmingly favor the Institutional Investors. The Institutional Investors purchased 70,967 net shares, compared to the Chester Group's 38,280, and expended $1,840,208 in net funds during the class period, compared to the Chester Group's $995,298. ***These other factors provide a more objective assessment of a movant's financial interest than the losses suffered, given that shares purchased, net shares purchased, and funds expended are static markers set in stone during the class period***, whereas losses suffered may be subject to future changes in the price per share.

---

3       In this analysis, courts use "net shares" and "retained shares" interchangeably. *See, e.g.*, *Silverberg v. DryShips Inc.*, No. 17-CV-4547, 2018 WL 10669653, at *6 (E.D.N.Y. Aug. 21, 2018) (in *Lax* analysis, referencing the "second factor, *i.e.*, net shares purchased or retained shares").

Accordingly, the Court finds that the Institutional Investors have the "largest financial interest in the relief sought by the class."

*Id.* at *2 (citing *Pio v. General Motors Co.*, Civ. No. 14–11191, 2014 WL 5421230, at * 4 (E.D. Mich. Oct. 24, 2014) ("declin[ing] the invitation to ignore all but the fourth *Lax* factor in deciding which movant has the largest financial interest in this litigation" and finding that "the first three factors provide the most objective measurement of a movant's stake in the litigation")). *See also Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, No. 06 CIV. 5797, 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007) (finding a loss differential of $40,000 was "very slight" and "cannot dictate such an important result" as class leadership and appointing the movant who claimed smaller investment losses but led with respect to the other three *Lax* factors); *Alkhoury v. Lululemon Athletica, Inc.*, No. 13 Civ. 4596, 2013 WL 5496171, at *1 (S.D.N.Y. Oct. 1, 2013) (appointing movant with lower investment losses than a competing movant, finding the "negligible difference" in losses to be "insufficient to outweigh the [movant's] substantial financial interest" as "evidenced by the other [*Lax*] factors."). Indeed, some courts find "net shares purchased or retained shares" "to be 'the most determinative'" of the *Lax* factors. *Silverberg*, 2018 WL 10669653 at *6 (citing *Pio*, 2014 WL 5421230, at *4 (collecting cases)).

*Figure 1* below sets forth the *Lax* factor comparison between the Nova Scotia Plans and the PGERS / CIL Group, when the two groups are considered with membership intact:

*Figure 1*

| Movant | Shares Purchased | Funds Expended | Shares Retained (a/k/a Net Shares) | | | | Claimed Loss |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | On each disclosure date | | | Past any disclosure | |
| | | | 9/25/24 | 12/6/24 | 3/3/25 | | |
| Nova Scotia Plans | 35,544 | $1,140,036 | 35,544 | 0 | 0 | 35,544 | $440,614 |
| PGERS / CIL Group | 37,581 | $1,089,079 | 28,918 | 21,654 | 22,726 | 28,918 | $596,635 |
| Boca Raton | 12,861 | $373,738 | 12,693 | 10,001 | 10,001 | 12,693 | $247,353 |

4

As shown above, the *Lax* factors are evenly split. As aggregated, the PGERS / CIL Group leads two *Lax* factors – largest claimed loss ($596,635) and, by a narrow 5% margin, most gross shares purchased (37,581 shares). The Nova Scotia Plans lead the other two *Lax* factors, with the most funds expended on Fortrea stock purchases during the Class Period ($1,140,036) and the highest number of net shares / retained shares (35,544), whether examined overall or based on the single corrective date with the most shares retained. At the same time, not only do the Nova Scotia Plans claim the second-largest loss ($440,614), they purchased nearly as many gross shares (35,544). Thus, not only do the Nova Scotia Plans lead in the factor (net shares / retained shares) that the *Silverberg* court noted some courts find to be the "most determinative," they also lead two of the three *Lax* factors (funds expended and net shares / retained shares) that the *Westchester Putnam* court found to be "more objective" measures of financial interest.

*Figure 2* shows the same factors after disaggregating the two movant groups to consider each member's losses individually. The analysis shifts to the largest single member of each respective group – PSSP from the Nova Scotia Plans and CIL Fund from the PGERS / CIL Group.

*Figure 2*

| Movant | Shares Purchased | Funds Expended | Shares Retained (a/k/a Net Shares) | | | | Claimed Loss |
|---|---|---|---|---|---|---|---|
| | | | On each disclosure date | | | Past any disclosure | |
| | | | 9/25/24 | 12/6/24 | 3/3/25 | | |
| PSSP | 20,280 | $650,464 | 20,280 | 0 | 0 | 20,280 | $251,401 |
| CIL Fund | 19,753 | $542,800 | 15,565 | 17,662 | 18,734 | 18,734 | $391,670 |
| PGERS | 17,828 | $546,279 | 13,353 | 3,992 | 3,992 | 13,353 | $204,965 |
| TPP | 15,264 | $489,572 | 15,264 | 0 | 0 | 15,264 | $189,213 |
| Boca Raton | 12,861 | $373,738 | 12,693 | 10,001 | 10,001 | 12,693 | $247,353 |

Here, the *Lax* factors remain split, but the majority of them now favor PSSP – a member of the Nova Scotia Funds. PSSP individually purchased more gross shares (20,280), spent more funds on Class Period purchases of Fortrea stock ($650,464), and had more net shares / retained shares, whether examined overall or based on the single corrective date with the most shares retained. By

5

comparison, the only *Lax* factor by which any single member of the PGERS / CIL Group leads the pack is claimed monetary loss, with the CIL Fund claiming a loss of $391,670. Yet, the CIL Fund does not even lead its group partner PGERS in every *Lax* category. This disaggregation illustrates why CIL Fund and PGERS, which had no pre-existing relationship predating this litigation, likely were paired together in an attempt to skew the *Lax* factor analysis.

*Figure 1* and *Figure 2* both make clear that, of the three movants, Boca Raton P&F *cannot* claim the largest financial interest by any measure (as it concedes (ECF 39)), whether the Nova Scotia Plans and the PGERS / CIL Group are viewed as groups or are disaggregated into their constituent members. As such, the Court's selection of the "most adequate plaintiff" narrows to the Nova Scotia Plans and the PGERS / CIL Group (or its members), with Boca Raton ruled out.

For all these reasons, as well as those set forth *infra* in *Figure 3* and the correlating analysis, the Nova Scotia Plans have claimed the largest financial interest in this litigation within the meaning of the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb). As such, the Nova Scotia Plans (or PSSP alone, if the Court disaggregates both groups) should benefit from the PSLRA's rebuttable presumption favoring their appointment to serve as lead plaintiffs.

## II.    THE RULE 23 EVALUATION AND PRESUMPTION REBUTTAL ANALYSIS FAVOR THE NOVA SCOTIA PLANS

Regardless of how it allocates the PSLRA's rebuttable presumption, the Court is required to continue the analysis by evaluating the competing movants' ability to satisfy Fed. R. Civ. P. 23, 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc), and by conducting a rebuttal analysis that accounts for the circumstances presented, 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). These steps have teeth and are not mere rubber stamps for whichever investor shouts loudest about its losses. Indeed, where multiple competing movants claim significant financial interest and strong incentive to prosecute the claims, courts will give greater weight to Rule 23 considerations and rebuttal arguments, and these

6

secondary analyses will drive their decision – even where some movants claim materially larger losses. *See*, *e.g.*, *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621-22, 624 (S.D.N.Y. 2015) (appointing as lead plaintiff the investor with third-largest loss of $84 million, over two competing groups of institutional investors claiming losses of $222 million (***$138 million larger***) and $88 million (***$4 million larger***), after calling the largest-loss group a "lawyer-driven artificial grouping"); *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 (S.D.N.Y. 2005) (appointing as lead plaintiff the movant determined to be "the more adequate" of two movants claiming "roughly equal damages," despite a ***$400,000*** difference between their claimed losses).[4]

The Nova Scotia Plans respectfully submit that these required statutory analyses firmly validate them as the "most adequate plaintiff" under the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(i), such that they should be appointed to serve as PSLRA lead plaintiff representing the Class of Fortrea investors. If the Court agrees that the PSLRA's rebuttable presumption applies to the Nova Scotia Plans (or to PSSP individually), then it is evident that the presumption cannot be rebutted and that they satisfy Rule 23. Conversely, even assuming, *arguendo*, that the Court credited the PSLRA's rebuttable presumption to the PGERS / CIL Group or to the CIL Fund individually, the facts before the Court make clear both that it was rebutted and that Rule 23 standards are not met.

### A.    The PGERS / CIL Group Does Not Withstand Scrutiny

The PGERS / CIL Group's composition and inadequate submissions to this Court raise material questions about its members' ability to efficiently and effectively represent the investor Class's interests. "Courts regularly require proposed lead plaintiff 'groups' to demonstrate their

---

[4]    *See also, e.g.*, *Doral*, 414 F. Supp. 2d at 403 (appointing "the more adequate and preferable of the two plaintiffs" notwithstanding that its $1.9 million in claimed investment losses gave it a "slightly lower" financial interest than a competing movant with losses of $2.3 million ($400,000 more)); *SafeNet*, 2007 WL 7952453, at *2-3 (after calling their respective financial interests "roughly equal," appointing as lead plaintiff the movant with a lesser financial interest than a competing movant, due to "reasonable doubts" about the competing movant's adequacy).

ability to function as a cohesive and independent unit to protect the interests of the class" and consider whether the group members had "a pre-existing relationship" and "whether they have a coherent plan for dividing responsibilities, resolving conflicts, and managing the litigation." *Petrobras*, 104 F. Supp. 3d at 622 (citing *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008)).[5]  As Judge Rakoff put it, while the PSLRA does authorize a "group" to serve as lead plaintiff:

> many courts, including this one, are skeptical of such arrangements when they are the product of an artificial grouping designed merely to qualify as lead plaintiff under the PSLRA.  Congress's express purpose in mandating that the lead plaintiff (if otherwise qualified) be appointed on the basis of financial interest was to "transfer primary control of private securities litigation from lawyers to investors." Allowing unrelated plaintiffs to band together in order to manufacture a larger financial interest does just the opposite.  It ensures that the lawyers, who are invariably the matchmakers behind such marriages of convenience, are the true drivers of the litigation.  Moreover, it creates problems of coordination, risks duplication of effort, and reduces the incentive of any individual group member to carry out its lead plaintiff duties to the fullest extent.

*Petrobras*, 104 F. Supp. 3d at 621-22 (quoting S. Rep. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 769, 685 and citing H.R. Conf. Rep. 104-369 at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731).

The PGERS / CIL Group artificially lumps together two unrelated, geographically distant funds – based in Pontiac, Michigan and Kansas City, Missouri (*see* ECF 36-4 ¶¶2, 3) – lacking any ***meaningful*** prior relationship or interactions.  The group members' attestations about their pre-litigation communications are conspicuously vague, referring only to having at some point "conferred about our leadership and oversight of this litigation" – at an unspecified time, in an

---

[5]    *See also Jakobsen v. Aphria, Inc.*, No. 18 Civ. 11376, 2019 WL 1522598, at *2 (S.D.N.Y. Mar. 27, 2019) ("A group of investors is permitted to serve jointly as lead plaintiffs in a securities class action under very limited circumstances, and only 'if such a grouping would best serve the class.'"); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 532-33 (S.D.N.Y. 2015) ("The prevailing position is that unrelated investors may join together, with review 'on a case-by-case basis,' only 'if such a group would best serve the class.") (collecting cases).

unspecified manner, for an unspecified amount of time – before filing their motion. *Id.* ¶7. This phrasing signals that the two funds held perhaps a single introductory phone call and that their purported "conferr[al]" consisted of a generalized willingness to move together and a *pro forma* exchange of contact into. The absence of any ***meaningful*** pre-lawsuit relationship undermines the group's cohesiveness, calling into doubt its ability to effectively and efficiently manage this complex litigation. Indeed, the PGERS / CIL Group has not stated ***how*** its members would do so. While they vaguely reference "joint decision-making" (*id.* ¶7), they do not even acknowledge the possibility of disagreement, let alone provide a resolution mechanism. Instead, they merely claim to "anticipate arriving at joint decisions consensually." *Id.* That aspirational intent is no substitute for an actual plan, *e.g.*, articulating how impasses would be broken, and without one, the Class faces real risks that the time needed for PGERS and the CIL Fund to reach "consensus" will exceed the window available to make and execute important litigation decisions, strategies, and filings.

Moreover, the PGERS / CIL Group's unwillingness to acknowledge and address the potential for internal disagreement raises a real possibility of deadlock if disagreement arises at a decision point in this litigation. With only two members, such a deadlock could not be resolved by a simple voting process, which would presumably result in a stalemate. Respectfully, the Court should not entrust the Class's fraud claims to the PGERS / CIL Group's unfounded optimism and "wing it" approach to oversight. *See*, *e.g.*, *Pipefitters Loc. No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191-92 (S.D.N.Y. 2011) (denying motion by unrelated institutional investor group, after finding a single pre-motion teleconference and a joint declaration with "conclusory assurances" of "protocols" and "communication procedures" "do not satisfy this Court that the Funds Group will be able to effectively manage this litigation"); *Alibaba*, 102 F. Supp. 3d at 533 (rejecting investor group whose members had "no pre-litigation relationship" aside

9

from "a single conference call," despite their articulating a weighted voting approach to resolving any decision-making disagreements); *Aphria*, 2019 WL 1522598, at *2-3 (denying motion by largely unrelated movant group after finding "plans for cooperation" described in the group's joint declaration to be "vague and conclusory" and "insufficient" "boilerplate assurances").

**B.    The Nova Scotia Plans Satisfy Rule 23 And Lack Any Rebuttal Vulnerability**

By contrast, the Nova Scotia Plans, two sophisticated pension funds with more than CAD $14 billion in combined assets under management (*see* ECF 32 at 9), suffer from ***none*** of the foregoing deficiencies.  Unlike the competing movants, the Nova Scotia Plans are so closely related as to be, in effect, "sister" plans.  As set forth in their motion papers, both PSSP and TPP are public sector defined benefit pension plans in Nova Scotia, Canada, and both are administered, pursuant to statute and contract, by the Nova Scotia Pension Services Corporation ("NS Pension"), which will be the sole decisionmaker over day-to-day litigation if the Court appoints the Nova Scotia Plans (or just PSSP) to serve as Lead Plaintiff.  *See id.* at 9-10.  The same individual, Steve Mahoney, NS Pension's Chief Investment Officer, signed Certifications on behalf of both Nova Scotia Plans.  *See* ECF 35-2 at *4, *11.  Thus, the Nova Scotia Plans' lead plaintiff appointment carries no risk of disjointed decision-making or intra-leadership disputes with respect to litigation decisions.  Instead, they offer streamlined, clearly defined, efficient, and effective leadership, by the same sophisticated people, from the same offices in Hallifax.

Headed by a single decisionmaker, and with a robust, meaningful, long-time, pre-litigation relationship, the Nova Scotia Plans' motion implicates none of the concerns that often militate against appointment of investor groups – namely, the inefficiencies of joint class leadership and rewarding lawyer-driven gamesmanship.  For purposes of the Court's Lead Plaintiff analysis, then, the two Nova Scotia Plans more closely resemble a *de facto* ***individual*** movant, than an investor group.  *See, e.g.*, *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1157 n.11 (N.D. Cal.

1999) ("Although the [New York City Pension] Funds are separate entities, the court is satisfied that they are essentially one person for purposes of the Reform Act, because they are all under the jurisdiction of New York City Comptroller's Office, and are represented in their dealings with private counsel through one 'in-house' counsel, the Corporation Counsel of the City of New York.").[6] As such, the more appropriate financial interest comparison is not between the Nova Scotia Plans and the PGERS / CIL Group – *i.e.*, one intact group versus the other – but rather between the Nova Scotia Plans in the aggregate and either PGERS or the CIL Fund individually.

*Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485 (D. Conn. 2017) is instructive. There, for purposes of its PSLRA lead plaintiff analysis, the court accepted as a viable movant group a nonprofit and nine investment funds it managed where "there is nothing to suggest that the funds are unable to function as a cohesive unit" given that they were "formed and are operated by the same entity," "had a preexisting relationship with each other prior to the initiation of this action," and "have interests that are closely aligned with each other." *Id.* at 497. By contrast, the court disaggregated a competing movant group consisting of two institutional investors (from Oregon and Illinois) and an individual who lacked any pre-existing, pre-litigation relationship, who discussed potential conflicts on a single pre-motion teleconference "but proposed no mechanism for resolving such disputes" beyond "work[ing] diligently to reach a 'consensus.'" *Id.* at 494. The court found particularly "troubling" all of the following: "the lack of a preexisting relationship," the "indicat[ion] that the group has been arranged by counsel" and the correlating "likelihood that the attorneys, not the clients, will control the action," the fact that "the group's

---

[6]     *See also, e.g.*, *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 262-63 (S.D.N.Y. 2019) (for purposes of PSLRA lead plaintiff analysis, preserving as a single group an individual and his family foundation, but disaggregating two groups of unrelated investors due to the groups' "boilerplate plans for cooperation" failing to adequately address the "overarching concern" of "whether the…members of the group can function cohesively and effectively manage the litigation apart from their lawyers").

11

plan for conflict resolution appears too general and not the product of sufficient pre-litigation planning," and "the fact that the group's plan for cooperation was devised at a single conference call does not give the court confidence of its ability to manage conflicts that may arise in the litigation." *Id.* at 494-95.[7] *See also, e.g.*, *In re Pfizer Inc. Sec. Litig*, 233 F.R.D. 334 (S.D.N.Y. 2005) (for purposes of PSLRA lead plaintiff analysis, disaggregating two groups of unrelated institutional investors, while preserving as a single group a family of affiliated Canadian mutual funds);[8] *Aronson*, 79 F. Supp. 2d at 1154, 1157 (for purposes of PSLRA lead plaintiff analysis, preserving the New York City Pension Funds as a single group, while disaggregating the New York State Common Retirement Fund from its "group" and considering it individually as the lead plaintiff movant due to its being the largest single member of the disaggregated group).[9]

---

[7]    The court cited, among other authorities, *Alibaba*, 102 F. Supp. 3d at 533, which in turn applied the 5-factor test for "whether 'the unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from the lawyers'" that was articulated in *Varghese*, 589 F. Supp. 2d at 392). *Galmi*, 302 F. Supp. 3d at 495. The *Alibaba* court explained:

> The factors courts have recognized as relevant to that analysis include: (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa.

102 F. Supp. 3d at 533.

[8]    For the briefing describing the nature of the group of affiliated Canadian mutual funds, *see In re Pfizer Inc. Sec. Litig.*, No. 04-cv-09866, ECF No. 7 (S.D.N.Y. Feb. 14, 2005).

[9]    *See also, e.g.*, *Beckman v. Ener1, Inc.*, No. 11 Civ. 5794, 2012 WL 512651, at *4 (S.D.N.Y. Feb. 15, 2012) (appointing a husband / wife group after disaggregating a competing group of unrelated investors that were considered individually due to "a real threat of lawyer-driving litigation"); *Micholle v. Ophthotech Corp.*, No. 17-CV-210, 2018 WL 1307285, at *8-9 (S.D.N.Y. Mar. 13, 2018) (for purposes of PSLRA lead plaintiff analysis, considering as an intact group a husband and wife while disaggregating a group of unrelated investors including a pension fund that did not evidence any pre-litigation relationship, participated in only a single pre-motion teleconference, and submitted a joint declaration stating that they would "exercise joint decision-making" and had "established procedures for overseeing the progress of the litigation and communicating regularly with counsel"); *In re Cloudera, Inc. Sec. Litig.*, No. 19-CV-03221, 2019 WL 6842021, at *6-8 (N.D. Cal. Dec. 16, 2019) (appointing as PSLRA lead plaintiff a group consisting of an individual and his 401(k) plan, after rejecting a competing group of two pension funds (from Massachusetts and New York) – despite the fact that "they 'jointly served as plaintiffs in a [securities] class action" – as being "comprised of 'unrelated individuals' brought together by attorneys" that had a single teleconference to discuss "strategy for prosecuting this action" and only generally described a "collaborative" approach with "no further information about how [they] would jointly manage the case or resolve disagreements," which raised "unaddressed" "organizational or decision-making process concerns" including "no detail whatsoever about any decision-making process") (quoting and applying *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 , 2008 WL 3925289, at *7-10 (N.D. Cal. Aug. 22, 2008)).

Here, the Nova Scotia Plans suffer from none of these issues, which plague the PGERS / CIL Group, and instead display exactly the sort of pre-litigation relationship and oversight cohesion that courts in this Judicial District highlight as evidencing valid movant groups. Thus, the most appropriate analysis is one preserving the Nova Scotia Funds as a group while disaggregating the PGERS / CIL Group into its two constituent members, which should be considered separately. *Figure 3* sets forth this version of the *Lax* factor analysis accordingly.

*Figure 3*

| Movant | Shares Purchased | Funds Expended | Shares Retained (a/k/a Net Shares) | | | | Claimed Loss |
|---|---|---|---|---|---|---|---|
| | | | On each disclosure date | | | Past any disclosure | |
| | | | 9/25/24 | 12/6/24 | 3/3/25 | | |
| Nova Scotia Plans | 35,544 | $1,140,036 | 35,544 | 0 | 0 | 35,544 | $440,614 |
| CIL Fund | 19,753 | $542,800 | 15,565 | 17,662 | 18,734 | 18,734 | $391,670 |
| PGERS | 17,828 | $546,279 | 13,353 | 3,992 | 3,992 | 13,353 | $204,965 |
| Boca Raton | 12,861 | $373,738 | 12,693 | 10,001 | 10,001 | 12,693 | $247,353 |

As *Figure 3* makes clear, under this analysis, **the Nova Scotia Plans lead every Lax factor category**. They spent 208% more funds to purchase 180% more Fortrea shares, retained 189% more shares past a corrective disclosure, and suffered a 12% larger loss ($48,944 more) than either the CIL Fund or PGERS. Thus, if the Court rightly credits the Nova Scotia Plans as exemplifying the class-benefitting, non-lawyer-driven grouping the PSLRA contemplates, while disaggregating the artificially created PGERS / CIL Group into its two constituent entities viewed independently, the outcome favoring the Nova Scotia Plans as the "most adequate plaintiff" under the PSLRA is even clearer. The Nova Scotia Plans score a clean sweep of the *Lax* factors, rather than having the edge in a toss up, greatly simplifying the Court's "largest financial interest" inquiry.

Whether or not the Court disaggregates the PGERS / CIL Group, for all these reasons, the Nova Scotia Plans not only have the "largest financial interest" within the meaning of the PSLRA and the widely-accepted *Lax* factor analysis, they also fully satisfy Rule 23's requirements and

13

face no vulnerability in a PSLRA rebuttal evaluation. Given all the foregoing, their significant financial interest in the outcome of this litigation, their strong pre-litigation relationship, their coherent leadership approach, and their ability to otherwise satisfy Rule 23, the Nova Scotia Plans respectfully submit that they are the movants "most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i).

## III. DEFENDANTS' ARGUMENTS LACK MERIT

### A. The Court Is Free To Enter The Proposed Protective Provisions

Defendants rightly take no position on the core issues before the Court – appointment of lead plaintiff and lead counsel under the PSLRA. *See* ECF 40 at 2 ¶1. Yet, they opine on how this Court should shape its order making those appointments. Their arguments should be rejected.

First, without actually confirming they *are* preserving documents, Defendants wrongly assert that this Court's wide discretion to enter procedural and discovery-related orders is somehow constrained because the PSLRA contains a document preservation provision. *Id.* at 3 ¶2. They are wrong. As is facially evident, the provision they cite, 15 U.S.C. §78u-4(b)(3)(C)(i), speaks only to preservation of documents during the PSLRA-imposed stay of discovery, which is in effect only while a Rule 12(b)(6) motion directed at the pleadings is pending. *See* 15 U.S.C. §78u-4(b)(3)(B). The defense-cited provision does not expressly impose document preservation obligations for any other stage of the litigation. Nor does the cited provision impose a restriction on this Court's entry of Orders requiring preservation of evidence. Defendants likewise cite no binding authority barring this Court's entry of such an Order. The Nova Scotia Pensions' proposed Order is more expansive than the PSLRA provision Defendants cite, *e.g.*, by imposing preservation obligations during the pendency of the entire Action. *See* ECF 31 at 4 ¶10. Defendants have no valid reason to object to such protections, and regardless, the Court is free to impose them.

14

Second, Defendants seek to constrain this Court's ability to Order the parties on matters of service. *See* ECF 40 at 3-4 ¶3. They claim that S.D.N.Y. Local Civ. R. 5.2(a), which provides that ECF filings are deemed served, suffices, and they imply that the rule bars this Court from exercising its broad discretion to direct how the parties can effectuate service to ensure the orderly conduct of the litigation and avoid future disputes. Not so. Their argument fails to account for the myriad documents that must be served but are *not* ECF-filed, ranging from counsel letters to discovery requests and responses. It also fails to account for the fact that not only does Rule 5.2 not prohibit this Court from entering an Order governing service, it expressly *contemplates* that the Court may do so. For instance, Rule 5.2(b), addressing forms of letters that may or may not be filed by ECF, states that it is "[s]ubject to the instructions regarding ECF published [documents] on the website of each respective Court and any pertinent Individual Judge's Practices." Likewise, Defendants cite no binding authority barring this Court from entering an Order governing service. Moreover, the Nova Scotia Plans' proposed Order provision includes "electronic" service, which is sufficiently broad to encompass both email delivery and ECF notifications. *See* ECF 31 at 4 ¶9. The Court is fee to so Order it, in the Court's considerable discretion.

Beyond the foregoing, it also bears noting that lead plaintiff Orders containing substantially similar language to that proposed by the Nova Scotia Plans are *routinely* entered in this Judicial District. *See, e.g.*, *Malm v. STMicroelectronics N.V., et al*, No. 1:24-cv-06384 (S.D.N.Y. Nov. 6, 2024), ECF 14 (Exhibit A submitted herewith) at 3-4 ¶14 (service) and ¶15 (preservation); *In re Hut 8 Corp. Sec. Litig.*, No. 1:24-cv-00904-VM (S.D.N.Y. Apr. 19, 2024), ECF 34 (Exhibit B submitted herewith) at 2-3 ¶10 (service) and ¶11 (preservation); *Semerak v. VNET Group, Inc., et al*, No. 1:23-cv-11187 (S.D.N.Y. Mar. 13, 2024), ECF 20 (Exhibit C submitted herewith) at 2-3 ¶10 (service) and ¶11 (preservation); *In Re: Med. Properties Tr., Inc. Sec. Litig.*, No. 1:23-cv-

08597 (S.D.N.Y. Aug. 13, 2024), ECF 24 (Exhibit D submitted herewith) at 2-3 ¶10 (service) and ¶11 (preservation); *Banerjee v. Zhangmen Educ., Inc., et al*, No. 1:21-cv-09634 (S.D.N.Y. (Feb. 11, 2022), ECF 11 (Exhibit E submitted herewith) at 3 ¶8 (service) and ¶9 (preservation).  It is unclear why Defendants chose to challenge protections that are so customarily adopted at this early stage.  Regardless of their reasons, their arguments fail.

### B.      The Nova Scotia Plans' Efforts Further Demonstrate That They Are The "Most Adequate Plaintiff" "Most Capable" Of Representing The Class

The Nova Scotia Plans respectfully submit that their efforts to protect the interests of the Class on matters of document preservation and service, through both their proactive submission of proposed Order provisions that Defendants challenge and their litigation herein of this early dispute with Defendants, further demonstrate that they are the "most adequate plaintiff" that is "most capable of adequately representing the interests of class members" under the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(i), such that they should be appointed to serve as lead plaintiffs and their chosen counsel, Pomerantz, should be appointed to serve as lead counsel.  Any movant could have taken these steps.  The Nova Scotia Plans, through their counsel Pomerantz, actually did so.

### CONCLUSION

The Nova Scotia Plans respectfully submit that, under *any* comparative analysis, they most credibly articulate the "largest financial interest" in this litigation, within the meaning of the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb), the widely-accepted *Lax* factors, and this Judicial District's case precedent, as discussed herein, thereby entitling them to the PSLRA's presumption, which no competing movant can rebut.  Regardless of how the Court applies that presumption, the Nova Scotia Plans further respectfully submit that the statutorily-required Rule 23 analysis, 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc), and rebuttal evaluation, 15 U.S.C. §78u-4(a)(3)(B)(iii)(II), firmly support their lead plaintiff appointment as the "most adequate plaintiff" that is "most

capable of adequately representing the interests of class members," 15 U.S.C. §78u-4(a)(3)(B)(i). As detailed herein, the Nova Scotia Plans are the only existing movant whose appointment ensures the investor Class is represented by a single, coherent, and decisive leadership overseeing the litigation and directing counsel's efforts, thereby ensuring the litigation is both led by institutional investors and prosecuted nimbly, efficiently, and effectively to maximize class-wide recovery. In the alternative, if the Court disaggregates all movant groups, the Nova Scotia Plans respectfully submit that PSSP is the presumptive lead plaintiff, that PSSP otherwise satisfies Rule 23, and that the presumption favoring PSSP cannot be rebutted, for all the same reasons set forth herein.

Accordingly, the Nova Scotia Plans respectfully urge the Court to grant their motion, thereby appointing them (or, if all groups were disaggregated, appointing PSSP) to serve as PSLRA lead plaintiffs and their choice of counsel, Pomerantz, to serve as lead counsel, and to deny the competing motions by the PGERS / CIL Group and Boca Raton.

Dated:  August 15, 2025

Respectfully submitted,

POMERANTZ LLP

*/s/ Matthew L. Tuccillo*
Matthew L. Tuccillo
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
mltuccillo@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Movants the Nova Scotia Public Service Superannuation Plan and the Nova Scotia Teachers' Pension Plan and Proposed Lead Counsel for the Class*

## CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for the Nova Scotia Public Service Superannuation Plan and the Nova Scotia Teachers' Pension Plan, certifies that this brief contains 5,897 words, which complies with the word limit of Local Civil Rule 7.1(c) and Rule 4.B of this Court's Individual Rules of Practice in Civil Cases.

Executed on August 15, 2025.

*/s/ Matthew L. Tuccillo*
Matthew L. Tuccillo

18