UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LUCAS DESLANDE, Individually and on Behalf:
of All Others Similarly Situated,                          :
                                           :  Civil Action No. 1:25-cv-04630-KPF

                  Plaintiff,      :
                                           :

       vs.                               :

FORTREA HOLDINGS INC., THOMAS PIKE,:
and JILL MCCONNELL,                          :

                Defendants.    :
                                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>

Susan L. Saltzstein
Robert A. Fumerton
Jeffrey S. Geier
Eryn M. Hughes
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3000

*Attorneys for Defendants Fortrea Holdings Inc.,
Thomas Pike, and Jill McConnell*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

     A.     The PSLRA Safe Harbor Applies ............................................................1

     B.     Plaintiffs' TSA Allegations Fail ...............................................................3

     C.     Plaintiffs' PSP Allegations Fail ...............................................................5

     D.     Statements of Corporate Optimism or Opinion Are Not Actionable .......7

     E.     Plaintiffs Fail to Adequately Allege Scienter ..........................................7

     F.     Plaintiffs Fail to Plead Loss Causation ..................................................10

CONCLUSION ..................................................................................................................11

## **TABLE OF AUTHORITIES**

### **CASES** Page(s)

*In re Adient plc Securities Litigation*,
   No. 18-CV-9116 (RA), 2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020), *aff'd sub*
   *nom. Bristol County Retirement System v. Adient*, No. 20-3846-cv, 2022 WL
   2824260 (2d Cir. 2022) ................................................................................1, 2, 3, 4

*In re Allergan PLC Securities Litigation*,
   No. 18 Civ. 12089 (CM), 2019 WL 4686445 (S.D.N.Y. Sept. 20, 2019) ..........................6

*In re AppHarvest Securities Litigation*,
   684 F. Supp. 3d 201 (S.D.N.Y. 2023).................................................................9

*Arkansas Public Employees Retirement System v. Bristol-Myers Squibb Co.*,
   28 F.4th 343 (2d Cir. 2022) ............................................................................2

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)...............................................................................11

*In re Avon Securities Litigation*,
   No. 19 Civ. 01420 (CM), 2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019) .........................7

*Bishins v. CleanSpark, Inc.*,
   No. 21 CV 511 (LAP), 2023 WL 112558 (S.D.N.Y. Jan. 5, 2023)..................................10

*Bratusov v. Comscore, Inc.*,
   No. 19 Civ. 3210 (KPF), 2020 WL 3447989 (S.D.N.Y. June 24, 2020)...........................4

*Chapman v. Mueller Water Products, Inc.*,
   466 F. Supp. 3d 382 (S.D.N.Y. 2020).................................................................9

*Construction Industry & Laborers Joint Pension Trust v. Carbonite, Inc.*,
   22 F.4th 1 (1st Cir. 2021)..................................................................................8

*City of Pontiac General Employees' Retirement System v. Lockheed Martin Corp.*,
   875 F. Supp. 2d 359 (S.D.N.Y. 2012).................................................................8

*In re Dentsply Sirona, Inc. Securities Litigation*,
   No. 24 Civ. 9083 (NRB), 2026 WL 124581 (S.D.N.Y. Jan. 16, 2026).............................9

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JPMorgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)..............................................................................7

*In re Fed Ex Corp. Securities Litigation*,
   517 F. Supp. 3d 216 (S.D.N.Y. 2021).................................................................4

*Gauquie v. Albany Molecular Research, Inc.*,
    No. 14 CV 6637 (FB) (SMG), 2016 WL 4007591 (E.D.N.Y. July 26, 2016)......................8

*In re Hi-Crush Partners L.P. Sec. Litig*,
    No. 12 Civ. 8557(CM), 2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013)................................9

*Jackson v. Abernathy*,
    960 F.3d 94 (2d Cir. 2020)..............................................................................................9

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001).............................................................................................7

*Lachman v. Revlon, Inc.*,
    487 F. Supp. 3d 111 (E.D.N.Y. 2020) .............................................................................5

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005)...........................................................................................10

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
    601 U.S. 257 (2024)..........................................................................................................4

*Martinek v. AmTrust Financial Services, Inc.*,
    No. 19 Civ. 8030 (KPF), 2020 WL 4735189 (S.D.N.Y. Aug. 14, 2020) ...........................2

*Meyer v. Jinkosolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014).............................................................................................5

*Nandkumar v. AstraZeneca PLC*,
    No. 22-2704-cv, 2023 WL 3477164 (2d Cir. May 16, 2023)............................................9

*New Orleans Employees Retirement System v. Celestica, Inc.*,
    455 F. App'x 10 (2d Cir. 2011) ....................................................................................8, 9

*Nguyen v. New Link Genetics Corp.*,
    297 F. Supp. 3d 472 (S.D.N.Y. 2018), *aff'd in part, vacated in part sub nom.*
    *Abramson v. NewLink Genetics Corp.*, 965 F.3d 165 (2d Cir. 2020)..................................7

*In re Nortel Networks Corp. Securities Litigation*,
    238 F. Supp. 2d 613 (S.D.N.Y. 2003)..............................................................................5

*Noto v. 22nd Century Group, Inc.*,
    35 F.4th 95 (2d Cir. 2022) .............................................................................................11

*In re NovaGold Resources Inc. Securities Litigation*,
    629 F. Supp. 2d 272 (S.D.N.Y. 2009).........................................................................2, 4

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000).............................................................................................8

iii

*In re Omega Healthcare Investors, Inc. Securities Litigation*,
    563 F. Supp. 3d 259 (S.D.N.Y. 2021)...............................................................................10

*In re Omnicom Group, Inc. Securities Litigation*,
    597 F.3d 501 (2d Cir. 2010)..............................................................................................10

*Plymouth Cnty. Ret. Ass'n v. Array Techs. Inc.*,
    2026 WL 810180 (2d Cir. Mar. 24, 2026).........................................................................2

*Prime Mover Capital Partners L.P. v. Elixir Gaming Technologies, Inc.*,
    548 F. App'x 16 (2d Cir. 2013) ...................................................................................10, 11

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)................................................................................................4

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona*,
    732 F. Supp. 3d 300 (S.D.N.Y. 2024)................................................................................9

*In re Scholastic Corp. Securities Litigation*,
    252 F.3d 63 (2d Cir. 2001)..................................................................................................5

*SEC v. Farnsworth*,
    692 F. Supp. 3d 157 (S.D.N.Y. 2023)................................................................................8

*Set Capital LLC v. Credit Suisse Group AG*,
    996 F.3d 64 (2d Cir. 2021)..................................................................................................4

*Setzer v. Omega Healthcare Investors, Inc.*,
    968 F.3d 204 (2d Cir. 2020)................................................................................................4

*Shemian v. Research In Motion Ltd.*,
    No. 11 Civ. 4068(RJS), 2013 WL 1285779 (S.D.N.Y. Mar. 29, 2013), *aff'd*, 570
    F. App'x 32 (2d Cir. 2014) .................................................................................................5

*Sherman v. Abengoa, S.A.*,
    156 F.4th 152 (2d Cir. 2025) ..............................................................................................9

*In re Signet Jewelers Ltd. Securities Litigation*,
    No. 16 Civ. 6728 (CM) (RWL), 2019 WL 3001084 (S.D.N.Y. July 10, 2019)................10

*Slayton v. American Express Co.*,
    604 F.3d 758 (2d Cir. 2010)................................................................................................2

*In re Turquoise Hill Resources Ltd. Securities Litigation*,
    625 F. Supp. 3d 164 (S.D.N.Y. 2022)................................................................................7

*Wang v. Cloopen Group Holding Ltd.*,
    661 F. Supp. 3d 208 (S.D.N.Y. 2023)............................................................................2, 6

iv

*zCap Equity Fund LLC v. LuxUrban Hotels Inc.*,
      792 F. Supp. 3d 407 (S.D.N.Y. 2025)...............................................................................9

**PRELIMINARY STATEMENT**

The Opposition[1] attempts to convert protected forward-looking statements into guarantees of future performance by selectively rewriting Fortrea's disclosures. But Fortrea never promised immediate cost savings the instant TSAs were exited, nor did it guarantee that it would not discover, years in the future, that PSPs might burn more slowly than expected. Instead, Fortrea provided forward-looking expectations of future savings as it moved into built-for-purpose systems and disclosed its backlog of multi-year contracts. Plaintiffs have not identified any actionable misstatement or omission in Fortrea's actual disclosures. Although the Court need not reach additional defects, the Complaint fails to plead particularized facts giving rise to a strong inference of scienter, or adequately allege loss causation.

**ARGUMENT**

A.    **The PSLRA Safe Harbor Applies**

Plaintiffs continue to elide that the statements they challenge concern expected *future* SG&A efficiencies, anticipated margin improvements, targeted EBITDA levels, and expected benefits from exiting the TSAs—statements that are forward-looking on their face. (Opp. at 15-17.) That a single vendor relationship (Cognizant) allegedly did not lead to immediate cost savings does not make the statements any less forward-looking or make the statements false when made. *See In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *18-19 (S.D.N.Y. Apr. 2, 2020) (statements about projected margin expansion and being "on track" were forward-looking even where based in part on anticipated improvement in one segment), *aff'd*, *Bristol Cnty. Ret.*

---

[1]    Capitalized terms have the meanings ascribed to them in Defendants' Memorandum of Law (ECF No. 64) ("Brief" or "Br."). "Opposition" or "Opp." refers to Plaintiffs' Memorandum of Law in Opposition (ECF No. 68). All citations and internal quotation marks are omitted, and all emphases in quotations are added, unless otherwise indicated.

*Sys. v. Adient*, 2022 WL 2824260 (2d Cir. July 20, 2022). Plaintiffs likewise offer no cogent explanation as to why Fortrea's backlog statements are not forward-looking. Their bald assertion that backlog would not provide "meaningful revenue" is unsupported and contrary to the allegations in the Complaint. (*Compare* ¶59-61; *with* Opp. at 16.)

Contrary to Plaintiffs' assertions (Opp. at 16), the statements were accompanied by specific and directly applicable cautionary language. (Br. at 10; Ex. B at 4, 50.) And, as explained, the statements are forward-looking and not rendered false by uncontextualized allegations concerning short-term budget overruns by a single vendor.[2] The cautionary language easily satisfies the PSLRA requirements. *See Plymouth Cnty. Ret. Ass'n v. Array Techs. Inc.*, 2026 WL 810180, at *2 (2d Cir. Mar. 24, 2026); *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 354-55 (2d Cir. 2022).[3]

Finally, Plaintiffs fail to adequately allege that any Defendant had *actual knowledge* that the forward-looking statements were false when made. (Br. at 11-12.) As explained, Plaintiffs' conclusory assertions and inferential leaps fail to satisfy the standard for pleading scienter, much less the "stricter" actual knowledge standard. *Slayton v. Am. Express Co.*, 604 F.3d 758, 773 (2d Cir. 2010).

---

[2]    *In re NovaGold Resources Inc. Sec. Litig.*, 629 F. Supp. 2d 272, 299-301 (S.D.N.Y. 2009) concerned statements about cost overruns, not projections about future margin improvements. *Wang v. Cloopen Grp. Holding Ltd.*, 661 F. Supp. 3d 208, 228 (S.D.N.Y. 2023) involved alleged concealment of a key metric that had already "plummeted."

[3]    *Martinek v. AmTrust Financial Servs., Inc.*, 2020 WL 4735189 (S.D.N.Y. Aug. 14, 2020) (Failla, J.) does not advance Plaintiffs' argument. There, the reasons for a company's decision to delist its stock—administrative costs and a new ownership structure—were within defendants' control and known when they allegedly misrepresented their "expectations." *Id.* at *14.

B.    **Plaintiffs' TSA Allegations Fail**

Plaintiffs' Opposition repeats the same mistaken theory that because Labcorp provided TSA services at cost, exiting the TSAs "would cause SG&A to improve." (Opp. at 9.) Plaintiffs, however, identify no actual statement that was false when made, relying instead on hindsight criticism that Fortrea's projections proved too optimistic. *See In re Adient*, 2020 WL 1644018, at *13-15.

Among other things, Fortrea explained that improvements in SG&A would "come in phases over the next few years" (¶212) and that Fortrea was moving "towards a more fit-for-purpose infrastructure" that would generate efficiencies "over time." (¶¶208, 218, 239, 241; *see also* Br. at 12-16.) Sidestepping the actual disclosures, Plaintiffs recast them, arguing "Defendants misrepresented that they had developed a plan to decrease Fortrea's [SG&A] . . . by the end of 2024, through exiting 'burdensome' [TSAs]." (Opp. at 1.) But the disclosures Plaintiffs cite tell a different story: Fortrea was "working to mitigate" "headwinds" (¶222), stated that "exiting those TSAs at the tail end of this year will give us that *opportunity for 2025*" (¶230), and saw "significant *potential* to expand margins by reducing SG&A expense as a percentage of revenue *over time once we fully exit the TSA services*." (¶239). Nowhere do Plaintiffs identify any statement that exiting the TSAs would result in immediate cost savings by the end of 2024—nor do they grapple with Defendants' repeated statements tying margin targets to revenue growth (¶¶226, 237)—or anything else rendered false by their allegations.

Plaintiffs attempt to manufacture falsity by pointing to Fortrea's acknowledgment of the Cognizant contract, and that "just six days later . . . McConnell represented that Fortrea personnel had been 'tasked with coming back with a replacement system or technology or process [for the TSAs] that [would be] more cost effective.'" (Opp. at 9-10.) There is no disconnect. On January 4, 2024, Fortrea explained that Cognizant had been retained to

3

"facilitat[e] a smooth switch and the establishment of the global Fortrea infrastructure." (¶141.) Hiring Cognizant to assist in developing the post-TSA environment is consistent with working to develop more "cost effective" systems for use in that environment.[4] Indeed, Plaintiffs acknowledge there would be a future cost savings from the Cognizant engagement. (¶159.) Accordingly, Plaintiffs' allegations are insufficient to state a claim. *See In re Adient*, 2020 WL 1644018, at *14-15; *In re Fed Ex Corp. Sec. Litig.*, 517 F. Supp. 3d 216, 231-32 (S.D.N.Y. 2021); *see also Rombach v. Chang*, 355 F.3d 164, 173-74 (2d Cir. 2004).[5]

Plaintiffs' alternate theory that there was a duty to disclose that the TSAs supposedly would be replaced by similar costs (Opp. at 12) fares no better. The duty to tell the "whole truth" extends to facts necessary to make what was said not misleading, not to "all the facts that pertain to a subject." *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 214 n.15 (2d Cir. 2020). It did not require disclosure of alleged budget overages for a short time when discussing future expectations from the resultant systems. *See Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 264 (2024); *Bratusov v. Comscore, Inc.*, 2020 WL 3447989, at *10-13 (S.D.N.Y. June 24, 2020) (Failla, J.).

---

[4]  Plaintiffs argue that the decrease in SG&A expense in the first quarter of 2025 cuts against Fortrea's argument because "[e]ven as TSA costs trended down, SG&A as a percentage of revenue remained elevated." (Opp. at 11, n.4.) Plaintiffs' chart, however, demonstrates that the ratio of SG&A to revenue also fell, consistent with Fortrea's forward looking expectations. (¶84.) Plaintiffs also continue to overlook that prior to exiting the TSAs, Fortrea was simultaneously paying for legacy TSA services and investing in the development of replacement systems. (*See* Br. at 5-6; Ex. A at 73 tbl. n.4.) As Fortrea ran off the TSAs, it would no longer be paying for two systems. And by developing its own fit-for-purpose systems, Fortrea expected the replacement infrastructure to be more efficient than the legacy systems that had been designed for a different business.

[5]  Plaintiffs' cases are inapposite. *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 85 (2d Cir. 2021) involved defendants that "knew with virtual certainty" that they planned to trigger an acceleration event. *In re NovaGold*, 629 F. Supp. 2d 272, 279, 300, involved a company that knowingly relied on a false feasibility study while costs were "spiraling" to more than double the estimate and then *used* that study to defeat a hostile takeover and launch a secondary IPO. *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 214 n.15 (2d Cir. 2020), involved a "conscious decision not to disclose" that the company's largest tenant's rental payments were funded by a $15 million loan from the company itself.

## C.    Plaintiffs' PSP Allegations Fail

Plaintiffs do not dispute the accuracy of Fortrea's disclosed backlog figures, nor that Fortrea had contracts extending over multiple years, just as it disclosed. (Br. at 17-18.) Instead, citing *Meyer v. JinkoSolar Holdings Co.*,[6] they complain that Fortrea should have disclosed that certain PSPs allegedly were "late in their lifecycle" with "diminishing profitability." (Opp. at 13.)[7] This argument fails for multiple reasons.

First, Plaintiffs have not pleaded particularized facts showing that Fortrea knew how these projects would perform years in the future. *See Shemian v. Rsch. In Motion Ltd.*, 2013 WL 1285779, at *21 (S.D.N.Y. Mar. 29, 2013) (rejecting omission theory where plaintiffs failed to plead facts showing defendants then knew of future product defects because securities laws do not require corporate officials to be "clairvoyant"), *aff'd*, 570 F. App'x 32 (2d Cir. 2014); *accord Lachman v. Revlon, Inc.*, 487 F. Supp. 3d 111, 130 (E.D.N.Y. 2020). Plaintiffs attempt to leap from a disclosed review of the backlog before August 2023 to knowledge that there would be a slower burn on certain contracts in 2025, but they offer no particularized allegation that the pre-Class Period review identified that future profitability would be lower than forecasted. Plaintiffs' reliance on *In re Nortel Networks Corp. Sec. Litig.*, 238 F. Supp. 2d 613, 626-28 (S.D.N.Y. 2003), is misplaced. That case involved GAAP violations and an unrecognized $12.5 billion impairment where defendants were specifically informed that orders would be significantly reduced.

---

[6]    *Meyer* involved affirmative statements directly contradicted by known existing environmental violations. 761 F.3d 245 at 251-52. Here, Plaintiffs do not allege that Fortrea's accurate backlog disclosures were contradicted by any concealed present fact.

[7]    Plaintiffs concede that one of the statements they challenge predates the class period but claim it is nevertheless actionable citing *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001). But *Scholastic* concerned the use of a pre-class period statement to show "defendants had a basis for knowing" statements were false. *Id.*

FE1 does not assist Plaintiffs. (Opp. at 14, 23, citing ¶¶73-74.) FE1 does not allege that Fortrea's disclosed backlog figures were inaccurate. FE1's assertion that the PSPs had "little work left on them" (¶73) does not support the inference that the projects were not accurately reflected in Fortrea's disclosed metrics and forecasts. FE1's claim that the PSPs were "not producing enough revenue to carry the Company" (*Id.*) is beside the point. And FE1's personal desire for "more color on the Company's pipeline of new contracts" (¶74) concerns sales, not the accuracy of the disclosed backlog.[8]

Next, Plaintiffs seek to dismiss Fortrea's specific warning that backlog is "not" a "consistent indicator of future revenue" and is affected by "the variable size and duration of projects" (Ex. B at 50) as "boilerplate." (Opp. at 14.) But the risk that materialized in 2025, i.e., a slower burn, is just the risk about which Fortrea warned. (*See* Br. at 18.) Plaintiffs do not plead any particularized facts demonstrating that Fortrea knew at the time it made the challenged statements that backlog would perform differently than expected.

Finally, the information Plaintiffs claim should have been disclosed is disconnected from Fortrea's actual statements regarding the existence of the backlog and that contracts extended over multiple years—both facts that Plaintiffs do not contest. (*See* Br. at 19 (citing cases).) That certain contracts would later turn out to burn more slowly than expected does not render any of Fortrea's truthful statements inaccurate or incomplete.[9]

---

[8]    Although Plaintiffs are correct that they have alleged that FE1 was employed by Labcorp and Fortrea for 21 years (Opp. at 14), that does nothing to expand the allegations attributed to FE1, which do not establish the falsity of any of Fortrea's statements about its backlog.

[9]    *In re Allergan PLC Sec. Litig.* does not support Plaintiffs' argument. There, Allergan's implants were already "specifically associated" with lymphoma at higher than market rates when "Allergan's disclosures suggest[ed] the opposite." 2019 WL 4686445, at *23 (S.D.N.Y. Sept. 20, 2019). Likewise, *Wang* involved the omission of a key metric that had already seriously declined. *Wang*, 661 F. Supp. 3d at 228. Here, by contrast, Plaintiffs do not meaningfully contest the accuracy of Fortrea's disclosed backlog figures or the multi-year nature of the underlying contracts.

6

**D.     Statements of Corporate Optimism or Opinion Are Not Actionable**

Plaintiffs' attempt to recharacterize statements about the "attractive" backlog (¶206), "confidence and visibility" into future revenues (¶200), and Fortrea as a "long-term value creation opportunity" (¶204) as actionable misrepresentations fails. These are quintessential statements of corporate optimism or opinion that could not have misled investors. (*See* Br. at 20.) Plaintiffs' own authority is consistent. *See Nguyen v. New Link Genetics Corp.*, 297 F. Supp. 3d 472, 488-89 (S.D.N.Y. 2018) (expressions of "confiden[ce]" were inactionable puffery). Likewise, while Plaintiffs concede that several challenged statements were statements of opinion (Opp. at 18), they seek to avoid the consequence by conclusorily claiming Defendants knew the opinions to be false—a theory that fails for the reasons discussed.

Plaintiffs alternatively claim that "context" or "repetition" makes the statements more definite. Unlike in the cases they cite, the context of Fortrea's statements did not provide any unique reassurance or definiteness that would change their status. *See In re Avon Sec. Litig.*, 2019 WL 6115349, at *16 (S.D.N.Y. Nov. 18, 2019) (statement of "strong team in place" when "th[at] team was currently presiding over the self-inflicted debt crisis"), *In re Turquoise Hill Res. Ltd. Sec. Lit.*, 625 F. Supp. 3d 164, 223 (S.D.N.Y. 2022) (statement of "progress" contained in same release that disclosed delays).

**E.     Plaintiffs Fail to Adequately Allege Scienter**

Plaintiffs concede they have not alleged motive. (Opp. at 24 n.13.) Absent motive, "the strength of the circumstantial allegations must be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001). Plaintiffs do not meet their burden of alleging conduct that is "highly unreasonable" and "represents an extreme departure from the standards of ordinary care." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JPMorgan Chase Co.*, 553 F.3d 187, 202-03 (2d Cir. 2009*).*

7

Plaintiffs have not pleaded that Defendants "knew or recklessly disregarded" information contradicting their public statements. (Opp. at 19-20.) As explained, purported knowledge that a single vendor was over budget for a short time does not establish the falsity of statements about expected future cost savings. (Br. at 24.) Nor does a review of backlog in 2023 establish that Fortrea knew certain PSPs would burn more slowly than forecasted in 2025. (*Id.* at 17-18.) Plaintiffs' allegations stand in contrast to the facts alleged in the cases they cite. *See Novak v. Kasaks*, 216 F.3d 300, 311-12 (2d Cir. 2000) (defendants knew of and "refused" to mark down "serious inventory problems"); *SEC v. Farnsworth*, 692 F. Supp. 3d 157, 187 (S.D.N.Y. 2023) (Failla, J.) (defendants possessed information, issued communications, and took actions directly "contradicting" public statements).

Plaintiffs' "specificity" argument fares no better. (Opp. at 19.) Plaintiffs have not connected any purported contrary internal information to Fortrea's statements. *Contra City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 372 (S.D.N.Y. 2012) (projections and performance contradicted by internal information); *Gauquie v. Albany Molecular Rsch., Inc.*, 2016 WL 4007591, at *2-*3 (E.D.N.Y. July 26, 2016) (guidance after a known contamination event had already impaired output); *Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*, 22 F.4th 1, 4, 9 (1st Cir. 2021) (software allegedly "did not even work"); *New Orleans Emps. Ret. Sys. v. Celestica Inc.*, 455 F. App'x 10, 14 (2d Cir. 2011) (defendants directly informed of inventory buildup).

The FE allegations do not move the needle. Alleged budget overages for one vendor (FE1) and a three-year cost model (FE2) are consistent with, not contradictory to, Fortrea's

disclosures. (Br. at 23-24.)[10] Plaintiffs have not identified any "specific information made available to the Individual Defendants demonstrating that their statements were false," as they acknowledge is necessary. (Opp. at 21.) Plaintiffs' citations underscore the deficiency. *See In re Dentsply Sirona, Inc. Sec. Litig.*, 2026 WL 124581, at *16 (S.D.N.Y. Jan. 16, 2026) (internal databases and reports contradicted public compliance representations and FDA reporting); *cf. Nandkumar v. AstraZeneca PLC*, 2023 WL 3477164, at *4 (2d Cir. May 16, 2023) (distinguishing *Celestica* where "allegations lack[ed] specificity as to what information the Individual Defendants allegedly knew").[11]

The core operations doctrine (Opp. at 23) cannot independently establish scienter. (*See* Br. at 22.) Plaintiffs' cases confirm the doctrine can only "support" an already-strong inference. *See San Antonio Fire & Police Pension Fund v. Dentsply Sirona*, 732 F. Supp. 3d 300, 319-20 (S.D.N.Y. 2024); *In re Hi-Crush Partners L.P. Sec. Litig*, 2013 WL 6233561, at *26 (S.D.N.Y. Dec. 2, 2013). Pike's resignation adds nothing for the reasons stated in the Brief. (Br. at 22-23.)[12] And Plaintiffs' "corporate scienter" argument is irrelevant because Plaintiffs have failed to plead scienter to impute to the Company. *See Jackson v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020).

---

[10]    Plaintiffs' assertion that Defendants "apparently concede[] the credibility of AC's FE allegations" is inconsistent with the remainder of the very same sentence, stating that Defendants "then argue that the FE allegations do not establish scienter *even if accepted as true*." (Opp. at 22.)

[11]    Plaintiffs cite *Sherman v. Abengoa, S.A.*, 156 F.4th 152, 160, 166-67 (2d Cir. 2025) for the proposition that "commonplace and widely known" allegations suffice, but the allegation credited there was corroborated by an audit, a regulatory resolution, and forensic reports. Courts routinely reject uncorroborated "common knowledge" FE assertions. *See Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 399-400 (S.D.N.Y. 2020); *In re AppHarvest Sec. Litig.*, 684 F. Supp. 3d 201, 244-45 (S.D.N.Y. 2023). Plaintiffs' competing citation to *AppHarvest* is inapposite. There, the "company-wide inference" rested on four confidential witnesses' personal knowledge in different roles at different times. *Id.* at 262-63.

[12]    *zCap Equity Fund LLC v. LuxUrban Hotels Inc.*, 792 F. Supp. 3d 407, 442 (S.D.N.Y. 2025) does not change the analysis because the resignation only reinforced already strong allegations of present-tense falsity and a later restatement.

The more compelling inference is a non-fraudulent one: Defendants continuously updated investors about execution challenges and revised margin expectations when appropriate. (*See* Br. at 25.)

## F.    Plaintiffs Fail to Plead Loss Causation

Plaintiffs have not connected the alleged stock drops to a disclosure that revealed any prior statement to be false. *See In re Omega Healthcare Invs., Inc. Sec. Litig.*, 563 F. Supp. 3d 259, 267 (S.D.N.Y. 2021) (plaintiffs must allege that the later disclosure "reveal[ed] to the market the falsity" of the earlier statement and "that the market reacted negatively"). To the contrary, they concede that on November 8, 2024, Fortrea reiterated that exiting the TSAs would not immediately reduce SG&A (¶175), but there was no alleged price reaction. (Opp. at 25 n.15.) That absence of market reaction undermines any claim that the issue had previously been concealed and severs any causal link between that issue and the later alleged declines.

Moreover, the 2Q24 Earnings Call did not partially reveal any fraud, instead disclosing only that Fortrea's post-spin execution challenges were proving more difficult than anticipated. (Opp. at 25.) *See Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*, 548 F. App'x 16, 18 (2d Cir. 2013). The September 25, 2024 Jefferies report is "a negative . . . characterization of previously disclosed facts," not a corrective disclosure. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010). *Bishins v. CleanSpark, Inc.*, 2023 WL 112558, at *12 (S.D.N.Y. Jan. 5, 2023), and *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *17 (S.D.N.Y. July 10, 2019) are not to the contrary because the reports in those cases disclosed previously unknown facts. The alleged December declines followed only what Plaintiffs term a self-imposed quiet period, but silence cannot reveal the falsity of prior statements. *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 n.4 (2d Cir. 2005). Finally, the March 3, 2025 guidance revision is not corrective because Plaintiffs do not offer any non-conclusory allegations that

Fortrea knew of the supposedly slower burn prior to its disclosure and therefore have not adequately alleged a revelation of previously concealed facts. *See Prime Mover*, 548 F. App'x at 18.[13]

## **CONCLUSION**

The Complaint should be dismissed with prejudice.[14]

Dated: New York, New York
     April 9, 2026

Respectfully submitted,

/s/ *Robert A. Fumerton*
Susan L. Saltzstein
Robert A. Fumerton
Jeffrey Geier
Eryn M. Hughes

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Phone: (212) 735-3000
Susan.Saltzstein@skadden.com
Robert.Fumerton@skadden.com
Jeffrey.Geier@skadden.com
Eryn.Hughes@skadden.com

*Attorneys for Defendants Fortrea Holdings Inc., Thomas Pike, and Jill McConnell*

---

[13]  Because the Section 10(b) claim fails, the Section 20(a) claim necessarily fails. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

[14]  Plaintiffs' footnote request for leave to amend (Opp. at 26 n.16) should be denied. Plaintiffs had a full opportunity to amend following the pre-motion letter, and their nonspecific request is insufficient. *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107-08 (2d Cir. 2022).

11

**LOCAL RULE 7.1(C) CERTIFICATION**

I, Robert A. Fumerton, hereby certify that the foregoing memorandum of law complies with the word count limitations set forth in Rule 7.1(c) of the Local Rules of the United States District Court for the Southern District of New York, and contains 3,490 words, exclusive of the caption, table of contents, table of authorities, table of exhibits, signature blocks, and this certificate.

Dated: New York, New York
      April 9, 2026

/s/ Robert A. Fumerton
Robert A. Fumerton

12